UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DESMOND QUICK,

                Plaintiff,

      v.                                                9:16-CV-0958
                                                              (GTS/CFH)

ANTHONY ANNUCCI, et al.,

                Defendants.

---

APPEARANCES:

DESMOND QUICK
03-B-1945
Plaintiff, pro se
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

GLENN T. SUDDABY
Chief United States District Judge

## DECISION AND ORDER

### I.    INTRODUCTION

The Clerk has sent to the Court a civil rights complaint and application to proceed in forma pauperis filed by pro se plaintiff Desmond Quick pursuant to 42 U.S.C. § 1983 ("Section 1983"). Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application").[1] The complaint asserts violations of plaintiff's rights under the United States Constitution and the Religious Land Use and Incarcerated Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. *See generally*

---

[1] Plaintiff has two other civil actions pending in the Northern District of New York. *See Quick v. Omittee*, No. 9:14-CV-1503 (TJM/CFH) and *Quick v. Minale*, No. 9:16-CV-0807 (BKS/DJS).

Compl. Plaintiff is currently incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Great Meadow Correctional Facility ("Great Meadow C.F.") and has not paid the statutory filing fee. Plaintiff has also filed a motion for preliminary injunctive relief. Dkt. No. 4.

## II. DISCUSSION

### A. IFP Application

Upon review of plaintiff's IFP Application (Dkt. No. 2), the Court finds that plaintiff has demonstrated sufficient economic need and may commence this action without prepayment of the filing fee. Thus, plaintiff's IFP Application is granted.[2]

### B. Initial Screening

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3] Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id.*

---

[2] "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[3] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare

3

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### C.     Summary of the Complaint

Plaintiff names three defendants in the caption of his complaint: Anthony Annucci, Commissioner of DOCCS; Christopher Miller, Superintendent, Great Meadow Correctional Facility; and Jeff McKoy, Deputy Commissioner for Program Services, DOCCS. Compl. at 1-3. Plaintiff asserts allegations of wrongdoing that occurred while he was incarcerated at Great Meadow C.F. *See generally* Compl. The following facts are set forth as alleged by plaintiff in his complaint. Plaintiff is a practicing Shi'ite Muslim. Compl. at 4. On March 26, 2016, plaintiff filed a grievance requesting that he receive the Cold Alternative Diet, also known as the Kosher diet. *Id.* On April 15, 2016, the Inmate Grievance Review Committee ("IGRC") denied plaintiff's grievance stating that the Cold Alternative Diet was only available for inmates of the Jewish Faith. *Id.* On April 16, 2016, plaintiff appealed the denial of his grievance to defendant Miller, but as of the date that he filed this action in August, 2016, he had not received a response to his appeal. *Id.* at 4-5. On May 22, 2016, plaintiff asked the IGRC to forward his unanswered grievance appeal to the Central Office Review Committee ("CORC"). *Id.* at 5. Plaintiff also wrote to CORC personally and explained that defendant

4

Superintendent Miler never responded to his grievance appeal. *Id.* DOCCS Directives state that the Cold Alternative Diet is for multiple religions not just for those of the Jewish Faith. *Id.* In support of his grievance, plaintiff argued that "Muslims and people of the Jewish Faith have similar[ ] religious law concerning food handling and that dietary concerns are a major ten[et] of plaintiff's beliefs." *Id.* Plaintiff claims that all the other meals available to inmates "do not allow [him] to adhere to [his] religious belief." *Id.* Plaintiff requests monetary damages and injunctive relief. *Id.* at 7. For a more complete statement of plaintiff's claims, refer to the complaint.

Construing the complaint liberally, plaintiff alleges that the defendants violated his religious rights under the First Amendment and RLUIPA, and denied him equal protection in violation of the Fourteenth Amendment.

**D.    Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

The First Amendment Free Exercise Clause guarantees the right to free exercise of religion. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). The Free Exercise Clause, and the First Amendment generally, applies to prison inmates, subject to certain limitations. *Ford v. McGuinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.") (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). Similarly, RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Prisoners have a right to a diet consistent with their religious beliefs. *Ford*, 352 F.3d at 597; *McEachin v. McGuinnis*, 357 F.3d 197, 203-04 (2d Cir. 2004).

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (*quoting LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).[4]

---

[4] In analyzing an equal protection claim vis a vis a DOCCS policy on the number of religious holidays inmates may celebrate with families, the Second Circuit recently stated:

> We are not so certain that where, as here, the state expressly classifies inmates on the basis of religion in the prison context, a plaintiff challenging the state's express classification on Equal Protection grounds must show either (1) that she was treated differently than members of a similarly situated group, *cf. Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001) ("[A] plaintiff who ... alleges an express racial classification ... , is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection."); or (2) that the state's express classification was the result of intentional discrimination, *cf. Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 337 (2d Cir. 2000) (explaining that one of the "ways [in which] a plaintiff [can] plead intentional discrimination that violates the Equal Protection Clause" is to "point to a law or policy that 'expressly classifies persons on the basis of race'" (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999))). Further, it appears that we have previously considered religious Equal Protection challenges (to both express religious classifications and policies generally applicable to all religious groups) in the prison context without requiring plaintiffs to show that they were treated differently than members of a similarly situated group, or that the state's policy was the result of intentional discrimination. *See, e.g., Benjamin*, 905 F.2d at 577-79.

7

**1. Monetary Damages Under RLUIPA**

RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities. *Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d Cir. 2013) (per curiam) (citing *Sossamon v. Texas*, 563 U.S. 277, 292-93 (2011)). Thus, plaintiff's claims for monetary damages under RLUIPA are barred and those claims are dismissed.

**2. Official Capacity Claims Under Section 1983**

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996). Actions for damages against a state official in his or her official

---

*Smith v. Perlman*, No. 15-117-pr, 2016 WL 4129233, at *3 (2d Cir. Aug. 3, 2016) (Summary Order).

capacity are essentially actions against the state. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).[5]

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against the defendants in their official capacities, those claims are barred by the Eleventh Amendment and are hereby dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### 3. Defendant Miller

Construing plaintiff's allegations in the light most favorable to him as a pro se litigant, plaintiff alleges that defendant Miller failed to correct wrongdoing after it was reported to him. *See generally* Compl. Specifically, plaintiff alleges that defendant Miller was made aware that plaintiff's request to receive the Cold Alternative Diet (which plaintiff claims satisfies the tenets of plaintiff's religious beliefs) was denied and he was advised that the Cold Alternative Diet was only available to inmates of the Jewish faith. *Id*. At this early stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's claims that defendant Miller violated his religious rights under the First Amendment and RLUIPA,[6] and denied him equal protection, survive

---

[5] In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities).

[6] As noted above, plaintiff's claims for monetary damages under RLUIPA have been dismissed. *See* Part II.D.1., *supra*.

9

sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 4. Defendants Annucci and McCoy

Supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[7]

Defendants Annucci and McCoy, although included in the list of defendants, are not mentioned anywhere in the body of the complaint. "Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007). *See also Crown v. Wagenstein*, No. 96 CIV. 3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York,* 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same). Indeed, it appears that plaintiff named Annucci and McCoy as defendants merely because of the positions that they hold in DOCCS. If the

---

[7] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).

defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, a plaintiff must demonstrate "'a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin*, 2008 WL 857528, at *2 (quoting *Bass*, 790 F.2d at 263).

As a result, the Court finds that plaintiff has failed to state a claim against defendants Annucci and McCoy upon which relief may be granted and thus all claims against them are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### E. Motion for Preliminary Injunctive Relief

Turning to plaintiff's motion for a temporary restraining order and preliminary injunctive relief, "[i]n general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35

n.4 (2d Cir. 2010) (internal quotation marks omitted)). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted)); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31, 2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore*, 409 F.3d at 511.

Plaintiff requests a court order directing that he "receive the religious Cold Alternative Diet." Dkt. No. 4 at 1. In support of his request, plaintiff alleges that the "religious Cold Alternative Diet" is "suppose[d] to be given to inmates who meet the allege[d] criteria to be afforded the meal. Plaintiff has explained his need for the meal through religious law of his faith and how the Religious Alternative Meal is insufficient to satisfy Plaintiff's need through religious law because the pots and pans used are also used to cook haram religiously forbidden meats such as pork and other meats for the regular meal." *Id.* at 3.[8] Plaintiff claims that he is "given relig[i]ously forbidden food on a daily basis." *Id.* at 4.

---

[8] Plaintiff also claims that the Religious Alternative Meal contains "sauces mix[ed] with soybean barbeque, tomato ect." which causes plaintiff gastrointestinal distress. *Id.* Plaintiff has not raised this issue in his complaint. *See generally* Compl.

12

Even if the Court were to assume that plaintiff has alleged that he may suffer irreparable harm, plaintiff has failed to substantiate any allegations of irreparable harm with evidence in admissible form or to demonstrate, with evidence, a likelihood of success on the merits of his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Res., Inc.,* 792 F. Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Additionally, since defendant Miller has not yet answered, and, indeed, has not even been served, the Court cannot ascertain plaintiff's likelihood of success, or whether he has otherwise met the standard for issuance of preliminary injunctive relief.

For the foregoing reasons, plaintiff's motion for preliminary injunctive relief (Dkt. No. 4) is denied.

**III. CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**.[9] The Clerk shall provide the Superintendent of the facility that plaintiff has designated as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that plaintiff has filed this action and is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

---

[9] Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

13

**ORDERED** that the Clerk provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that (1) the claims for monetary damages pursuant to RLUIPA and (2) the claims for monetary damages against the defendants in their official capacities under Section 1983 are **DISMISSED with prejudice**;[10] and it is further

**ORDERED** that all claims against defendants Annucci and McCoy are **DISMISSED without prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[11] and it is further

**ORDERED** that defendants Annucci and McCoy are **DISMISSED without prejudice** as defendants; and it is further

**ORDERED** that the Clerk shall issue a summons and forward it, along with a copy of the complaint, to the United States Marshal for service upon defendant Miller. The Clerk shall forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the complaint be filed by the defendant Miller, or his counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

---

[10] Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011). Amendment of these claims would be futile.

[11] Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

14

**ORDERED** that plaintiff's motion for preliminary injunctive relief (Dkt. No. 4) is **DENIED**; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; plaintiff's failure to do so may result in the dismissal of this action; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: August 29, 2016
Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge